# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| | : | CRIMINAL ACTION |
| v. | : | NO. 1:17-cr-00138-MHC-RGV |
| | : | |
| CHRISTOPHER A. MCCRAY | : | |

## MAGISTRATE JUDGE'S FINAL REPORT, RECOMMENDATION, AND ORDER

Defendant Christopher A. McCray ("McCray") is charged in an indictment with one count of conspiring with unindicted co-conspirators, including a principal of a subcontractor (referred to as "Person #1"), to commit offenses against the United States, in violation of 18 U.S.C. § 371, by engaging in unlawful kickback transactions when he knowingly and willfully solicited and accepted money from Person #1 in relation to a prime contract with the United States, in exchange for improper favorable treatment in connection with a prime contract or subcontract, in violation of 41 U.S.C. § 8702, and with fourteen counts of knowingly and willfully accepting kickback payments totaling at least $75,000 in return for improper favorable treatment in connection with a prime contract entered into by the United States, in violation of 41 U.S.C. §§ 8702 and 8707. [Doc. 1].[1] McCray has filed a

---

[1] The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

motion to quash the indictment, or alternatively, to dismiss all charges filed against him, [Doc. 25], which the government opposes, [Doc. 31]. For the reasons that follow, it is **RECOMMENDED** that McCray's motion to quash the indictment, [Doc. 25], be **DENIED**.

## I. INTRODUCTION

The instant indictment charges that beginning in August 2012, and continuing through May 2014, McCray, while working as a Country Manager for a company referred to as "Subcontractor #1" at Bagram Airfield, a United States military base located in Afghanistan,[2] conspired to engage in unlawful kickback transactions and actually did accept kickback payments in return for improper favorable treatment in awarding subcontracts in relation to a prime contract entered into by the United States. See [Doc. 1]. In particular, a German company, referred to as "Prime Contractor," held a prime United States government contract with the Army and Air Force Exchange Service ("AAFES") for the movement of AAFES goods to, from, and

---

[2] Subcontractor 1, which was based in the United Arab Emirates and employed two individuals, including McCray, at the Bagram Airfield, "provided transportation and freight forwarding services on Bagram Airfield and to and from other locations in Afghanistan," and it "often worked as a subcontractor to other companies that held prime contracts with the United States or first tier subcontracts for companies that held prime contracts." [Doc. 1 at 2 ¶ 4]. Therefore, Subcontractor #1 "often awarded subcontracts to local trucking companies which would actually perform the work." [Id.]. McCray reported to the owner of Subcontractor #1, who resided in California, and "was responsible for most of the contracting process at Bagram Airfield." [Id. at 2 ¶ 5].

2

within Bagram Airfield, and in March 2012, it subcontracted its transportation responsibilities to Subcontractor #1 as a first-tier subcontractor. [Id. at 3 ¶¶ 6-7]. Subsequently, in November 2012, Subcontractor #1 subcontracted, on a second-tier subcontract, the transportation responsibilities on a per truckload basis with an Afghan trucking company, referred to as "Subcontractor #2," which was owned by Person #1, and in this same month, "Subcontractor #2 began moving AAFES cargo for Subcontractor #1 on the subcontract." [Id. at 3 ¶ 8].

The indictment alleges that McCray, who had "entered into an agreement with Person #1 and Subcontractor #2 to receive kickbacks in the amount of 10% to 15% of the gross revenue that Subcontractor #2 was to earn by moving freight for Subcontractor #1," would "arrange to have second tier subcontract work which his employer, Subcontractor #1, had obtained from Prime Contractor, awarded to Person #1 and Subcontractor #2." [Id. at 3 ¶ 10(a)-(b)]; see also [id. at 4 ¶ 11(a)]. The indictment also details that Subcontractor #2 paid kickbacks to McCray, initially in cash, then by wires to McCray's United States bank account on at least two occasions via an account named "Samy International Transit," and then by sending Western Union money orders to McCray's mother, who would deposit the money into McCray's bank accounts, and once to his girlfriend. [Id. at 4 ¶ 10(c)-(d)]; see also [id. at 4-6 ¶ 11(c)-(q)]. Counts Two through Fifteen of the indictment charge that on

3

fourteen occasions between December 2012 and May 2014, McCray "knowingly and willfully accepted and caused to be accepted, kickback payments totaling at least $75,000 from the owner of Subcontractor #2 and other Subcontractor #2 officials, in return for [his] improper favorable treatment, namely his actions in awarding transportation subcontracts to Subcontractor #2, in connection with a prime contract entered into by the United States[.]"  [Id. at 6-8 ¶ 13].

McCray moves to quash the indictment, [Doc. 25], which the government opposes, [Doc. 31].  McCray has not filed a reply in support of his motion, and his pending motion is now ripe for review.

## II. DISCUSSION

McCray first moves to quash Count One of the indictment, arguing that it "is predicated upon [him] having conspired with another person to defraud the United States by receiving 'improper' kickbacks," but "[w]ith no evidence of either the existence of a conspiracy, nor proof of an agreement to defraud, nor evidence of any loss to the United States, Count One not only fails as a matter of law, but also fails unless [he] received 'improper' kickbacks."  [Doc. 25-1 at 3].  McCray next asserts that Counts Two through Fifteen of the indictment must be dismissed because the "'[k]ickback [s]tatute' is unconstitutionally vague."  [Id.].  In response, the government asserts that the charges in the indictment sufficiently allege a

conspiracy and satisfy the statutes upon which the charges are based, and that the kickback statute is not unconstitutionally vague. [Doc. 31].

### 1. *Legal Standard*

"Federal Rule of Criminal Procedure 7(c) governs the requirements for what must be contained in the indictment to properly charge a crime." United States v. Ressler, Criminal File No. 1:06-CR-103-1-TWT, 2007 WL 602210, at *2 (N.D. Ga. Feb. 16, 2007), adopted at *1. "Rule 7(c)(1) requires that '[t]he indictment or information [] be a plain, concise, and definite written statement of the essential facts constituting the offense charged and [] be signed by an attorney for the government.'" Id. (alterations in original) (quoting Fed. R. Crim. P. 7(c)(1)). "Rule 7(c)(1) further provides that '[f]or each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated.'" Id. (alteration in original) (quoting Fed. R. Crim. P. 7(c)(1)). The charges in the indictment satisfy the procedural requirements of Rule 7, see [Doc. 1], and McCray does not contend otherwise, see generally [Docs. 25 & 25-1]. Instead, he has advanced specific arguments with respect to each count of the indictment, which will be addressed.

### 2. *Count One of the Indictment*

McCray is charged in Count One with conspiring to commit offenses against the United States by engaging in unlawful kickback transactions, in violation of 18 U.S.C. § 371, which provides:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 371. McCray moves to dismiss this conspiracy count, arguing that "[t]he [s]tatute requires proof that two or more persons conspired to commit an offense against the United States, or to [d]efraud the United States" and that the United States "has disclosed in discovery . . . that it believes it can prove that a conspiracy existed between [McCray] and a specifically identified citizen of Afghanistan," but that "[a]ccording to counsel for [] the United States, the specifically identified citizen of Afghanistan will not be appearing to testify at the trial of the case" and since McCray "may not [be] force[d] . . . to testify," the "United States has produced neither an illegal agreement entered into by [McCray], nor any criminal intent" and therefore, "no illegal overt act can be shown." [Doc. 25-1 at 1-2].[3] However, for the

---

[3] McCray also argues that the United States cannot produce evidence that he defrauded the United States or that he caused any loss to the United States, see [Doc. 25-1 at 2-3]; however, as the government points out, these arguments "are simply irrelevant" since "Count One of the Indictment alleges that [McCray] conspired to

reasons that follow, the Court finds that the government has properly alleged a conspiracy in the indictment and that dismissal of Count One is not warranted.

"'Generally, an indictment is sufficient if it: 1) sets forth the elements of the offense in a manner which fairly informs the defendant of the charge against which he must defend and 2) enables him to enter a plea which will bar future prosecution for the same offense.'"[4] United States v. Germany, 296 F. App'x 852, 862 (11th Cir. 2008) (unpublished) (quoting United States v. Poirier, 321 F.3d 1024, 1028 (11th Cir. 2003)). The Eleventh Circuit has held that "'when analyzing challenges to the sufficiency of an indictment, courts give the indictment a common sense construction, and its validity is to be determined by practical, not technical, considerations.'" Id. (citation omitted) (quoting Poirier, 321 F.3d at 1029). Furthermore, "[i]f an indictment specifically refers to the statute on which the charge was based, the reference to the statutory language adequately informs the defendant of the charge." United States v. Fern, 155 F.3d 1318, 1325 (11th Cir. 1998) (citation

---

commit offenses against the United States" and "does not allege that [McCray] conspired to defraud the United States," which is a "separate offense[ under the statute]," see [Doc. 31 at 7-8 (citations omitted)].

[4] As previously discussed, "[t]he offense of conspiracy is committed when 'two or more persons conspire either to commit any offense against the United States, or to defraud the United States . . ., and one or more of such persons do any act to effect the object of the conspiracy.'" United States v. Bobo, No. CRIMA1:06CR0172-02TW, 2007 WL 962976, at *2 n.1 (N.D. Ga. Feb. 16, 2007) (quoting 18 U.S.C. § 371).

omitted). In short, "[a]n indictment for conspiracy to commit an offense is not required to be as specific as a substantive count and is constitutionally asserted if it sets forth the essential elements of the offense, identifies co-conspirators, the object of the conspiracy, the conspiracy timeframe, and the situs of the conspiracy." United States v. Durrett, No. 1:10–cr–134–WSD, 2012 WL 243761, at *4 (N.D. Ga. Jan. 25, 2012), aff'd, 524 F. App'x 492 (11th Cir. 2013) (per curiam) (unpublished) (citations omitted).

The indictment charges that beginning in August 2012, and continuing through May 2014, McCray and others, including Person #1, agreed "with each other to commit offenses against the United States, namely to engage in unlawful kickback transactions, in violation of 41 U.S.C. § 8702"; that the purpose of the conspiracy was for McCray "to enrich himself by soliciting and receiving things of value from Person #1 in exchange for favorable treatment in connection with subcontract work at Bagram Airfield"; that McCray "would arrange to have second tier subcontract work which his employer, Subcontractor #1, had obtained from Prime Contractor, awarded to Person #1 and Subcontractor #2"; that pursuant to an agreement reached between himself and Person #1 and Subcontractor #2, McCray would receive kickbacks in the amount of 10 to 15 percent of the gross revenue Subcontractor #2 was to earn as a result of McCray's favorable treatment; and that

McCray did in fact receive kickbacks from Subcontractor #2 as evinced by the detailed list of overt acts providing the dates and amounts of such monetary transactions between Subcontractor #2 and McCray or his mother or girlfriend on his behalf. [Doc. 1 at 1 ¶ 1, 3-6 ¶¶ 9-11]. Thus, "the essential elements of the charged crime, with details as to how the scheme operated– including time frame, participants and location, are pled in the indictment." United States v. Slawson, Criminal Case No. 1:14–CR–00186–RWS–JFK, 2014 WL 5804191, at *7 (N.D. Ga. Nov. 7, 2014), adopted by 2014 WL 6990307, at *1 (N.D. Ga. Dec. 10, 2014) (citations omitted).

McCray argues that the government cannot prove the elements of a conspiracy because it does not intend to call the "specifically identified citizen of Afghanistan," with whom he is alleged to have conspired, and because McCray cannot be compelled to testify at trial, see [Doc. 25-1 at 1-2], but these arguments "are not a basis for pre-trial dismissal of the indictment," United States v. Worth, Criminal Indictment No. 1:15–CR–00004–AT–GGB, 2015 WL 5970756, at *4 (N.D. Ga. Apr. 22, 2015), adopted by 2015 WL 5999322, at *2 (N.D. Ga. Oct. 14, 2015) (citation omitted). Indeed, "[t]here is no summary judgment procedure in criminal cases," and "[a] court may not dismiss an indictment . . . on a determination of facts that should [] be[] developed at trial." Id. (third alteration in original) (citations and

internal marks omitted); see also United States v. Rhame, CRIMINAL ACTION NO. 1:16-CR-67-SCJ-CMS, 2017 WL 5591273, at *7 (N.D. Ga. Nov. 20, 2017) (citation omitted) ("A motion to dismiss is decided based on the facts alleged in the indictment itself, not outside facts [the] [d]efendant [] intends to present at trial.").[5] The indictment "incorporate[s] the elements of the offenses, [is] definite as to time, place, means, and motivation, and allege[s] the necessary scienter and jurisdictional components." United States v. Quinones, No. CR410–223, 2012 WL 2064705, at *5 (S.D. Ga. May 22, 2012), adopted by 2012 WL 2064847, at *1 (S.D. Ga. June 6, 2012). "In other words, [the indictment is] sufficiently specific to apprise [McCray] of the charges against him, and [it] can be relied upon to shield him from further prosecutions for the same crimes," and "[n]othing more is required." Id. (citations omitted); see also United States v. Reddy, 534 F. App'x 866, 877 (11th Cir. 2013) (unpublished) (footnote and citations omitted) ("When an Indictment's language generally tracks the statutory language, the Indictment is sufficient to withstand a motion to dismiss."). Indeed, in reading the indictment, McCray ignores the plain language of the charges, "as well as allegations contained elsewhere in the indictment." United States v. Dempsey, 768 F. Supp. 1256, 1275 (N.D. Ill. 1990). The

---

[5] In fact, as the government points out, it may prove the existence of a conspiracy "through [McCray's] own statements, through numerous emails and other documents, and through financial records" as it may "prove a conspiracy through the use of circumstantial evidence." [Doc. 31 at 9 (citations omitted)].

indictment clearly tracks the language of 18 U.S.C. § 371 and the kickback statute and alleges a knowing and willful scheme to commit offenses against the United States over a discrete period of time, resulting in McCray illegally receiving kickbacks from the scheme, which is a "plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1), see also United States v. Lentz, No. CR406-376, 2007 WL 2177068, at *2 (S.D. Ga. July 25, 2007), adopted at *1. In short, Count One "passes sufficiency muster" since "it sets forth the elements of the offense, identifies the co-conspirators and the object of the conspiracy, the time span of the conspiracy and the conspiracy's locale," Durrett, 2012 WL 243761, at *6 (citation omitted), and it is therefore not due to be dismissed.

### 3. *Counts Two through Fifteen of the Indictment*

McCray is charged in Counts Two through Fifteen with knowingly and willfully accepting and causing to be accepted kickback payments totaling at least $75,000 from "the owner of Subcontractor #2 and other Subcontractor #2 officials, in return for [his] improper favorable treatment, namely his actions in awarding transportation subcontracts to Subcontractor #2," [Doc. 1 at 6-7 ¶ 13], in violation of 41 U.S.C. §§ 8702 and 8707.[6]  It is a violation of § 8702 to:

---

[6] "A person that knowingly and willfully engages in conduct prohibited by section 8702 of this title shall be fined under title 18, imprisoned for not more than 10 years, or both." 41 U.S.C. § 8707.

> (1) provide, attempt to provide, or offer to provide a kickback;
>
> (2) solicit, accept, or attempt to accept a kickback; or
>
> (3) include the amount of a kickback prohibited by paragraph (1) or (2) in the contract price–
>
>> (A) a subcontractor charges a prime contractor or a higher tier subcontractor; or
>>
>> (B) a prime contractor charges the Federal Government.

41 U.S.C. § 8702; see also [Doc. 1 at 6-9 ¶ 13]. While the "term kickback has a commonly understood meaning," United States v. Hancock, 604 F.2d 999, 1002 (7th Cir. 1979) (per curiam), it is defined in the statute as "any money, fee, commission, credit, gift, gratuity, thing of value, or compensation of any kind that is provided to a prime contractor, prime contractor employee, subcontractor, or subcontractor employee to improperly obtain or reward favorable treatment in connection with a prime contract or a subcontract relating to a prime contract," 41 U.S.C. § 8701(2).

McCray argues that Counts Two through Fifteen should be dismissed because "[t]he term 'improper' or 'improperly' is not defined by the statute, nor is it defined in the Code of Federal Regulations, nor is it defined in authoritative case law" and that the "ordinary citizen is [therefore] left to speculate what 'improper' means," rendering the statute "too vague for a citizen to understand" and "void for vagueness and unenforceable." [Doc. 25-1 at 4]. Specifically, McCray asserts that

the "kickback statute does not specify what conduct is prohibited, thus improperly delegating to the Department of Justice the authority to decide, without any guidance whatsoever to determine what is and what is not 'proper' and 'improper.'" [Id. at 5]. The government responds that "the meaning of 'improper' is neither mysterious nor vague," and that "this court should conclude the statute, at least as applied to these facts, is not unconstitutionally vague and that the [i]ndictment's allegations satisfy the elements of soliciting a kickback." [Doc. 31 at 12, 14].

"Unconstitutionally vague statutes are those which are not subject to reasonable interpretation." United States v. Nowka, No. 5:11-cr-00474-VEH-HGD, 2012 WL 2862061, at *3 (N.D. Ala. May 10, 2012), adopted by 2012 WL 2862053, at *2 (N.D. Ala. July 11, 2012) (citations omitted). "'It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined.'" Allied Veterans of World, Inc.: Affiliate 67 v. Seminole Cty., 783 F. Supp. 2d 1197, 1206 (M.D. Fla. 2011), aff'd, 468 F. App'x 922 (11th Cir. 2012) (per curiam) (unpublished) (quoting Grayned v. City of Rockford, 408 U.S. 104, 108 (1972)). "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." Hill v. Colorado, 530 U.S. 703, 732

(2000) (citation omitted); accord United States v. Williams, 553 U.S. 285, 304 (2008). However, "[t]here is a strong presumption that statutes passed by Congress are valid," United States v. Carver, 422 F. App'x 796, 800 (11th Cir. 2011) (per curiam) (unpublished) (citation and internal marks omitted), and "because [McCray's] void for vagueness challenge does not raise a First Amendment issue, it must be evaluated only as applied, in the light of the facts of the case at hand," United States v. Maughon, Criminal Action No. 1:11–CR–028–TWT–ECS, 2011 WL 3489973, at *3 (N.D. Ga. June 21, 2011), adopted by 2011 WL 3489948, at *1 (N.D. Ga. Aug. 9, 2011) (citations omitted). Furthermore, "[t]he constitutionality of an allegedly vague statutory standard is closely related to whether the standard incorporates a requirement of *mens rea*," and the Supreme Court has stated:

> A statutory requirement that an act must be willful or purposeful may not render certain, for all purposes, a statutory definition of the crime which is in some respects uncertain. But it does relieve the statute of the objection that it punishes without warning an offense of which the accused was unaware.

Id. (quoting Screws v. United States, 325 U.S. 91, 101-102 (1945) (Douglas, J. concurring)); see also United States v. Waymer, 55 F.3d 564, 568 (11th Cir. 1995) (citation omitted) ("The constitutionality of a vague statutory standard is closely related to whether the standard incorporates a requirement of *mens rea*."); High Ol' Times, Inc. v. Busbee, 673 F.2d 1225, 1229 (11th Cir. 1982) (citations omitted) ("The

14

Supreme Court has held that the inclusion of a specific mens rea element may alleviate a law's vagueness with respect to providing fair notice to the accused that certain conduct is prohibited."). "Supreme Court precedent makes clear that courts should use the void for vagueness remedy sparingly," as "under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws." United States v. Gerlay, No. 3:09–cr–00085–JWS–JDR, 2009 WL 4897748, at *1 (D. Alaska Dec. 11, 2009) (footnote and internal marks omitted).[7]

While there is a dearth of case law addressing the kickback statute at issue, the Court finds persuasive the reasoning in United States v. Velasco, No. 8:05-CR-496-T-23MSS, 2006 WL 1679586, at *3-6 (M.D. Fla. June 14, 2006), adopted at *1, where the court rejected the defendant's argument that "the term 'improperly' [was] vague and overbroad because the statute [did] not contain a definition of the term," id. at *3. First, the court reasoned that the defendants, who were charged with providing a large sum of money to a co-defendant "for the purpose of improperly obtaining or rewarding favorable treatment in connection with the subcontract," could not "establish that their conduct if proven would not fall within

---

[7] Indeed, "[a] court may not invalidate application of a statute under the void-for-vagueness doctrine simply because there is some degree of ambiguity in the provisions of the statute," United States v. Ortiz, 738 F. Supp. 1394, 1397 (S.D. Fla. 1990), and the Supreme Court "has rarely held federal statutes to be void for vagueness," KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner, 647 F. Supp. 2d 857, 893 (N.D. Ohio 2009) (citation omitted).

the clearly proscribed improper payment as contemplated by the Act." Id. at *2, 5. The court reviewed the legislative history of the statute and explained that "when the Act was amended [in 1986,] the intention was that the definition of 'favorable treatment' used in the [] cited definition of 'kickback' was to be construed 'to reach all instances of behavior which constitute a commercial bribe in connection with a government contract," and that "the term 'improperly' was included 'to ensure that exchange[s] made which are authorized by the contract itself, such as additional payments made under acceleration provisions, or for other permissible purposes, such as innocent or incidental favors, are not included under the definition of 'kickback.'" Id. at *3 (last alteration in original) (citations omitted). Here, the indictment charges a classic kickback form of commercial bribery whereby McCray, an employee of Subcontractor #1, is alleged to have agreed to accept and accepted monetary payment on at least fourteen occasions in return for his favorable treatment in awarding transportation subcontracts to Person #1 and Subcontractor #2 in relation to a prime contract entered into by the United States. See [Doc. 1]. Clearly, McCray's "acts if proven would be improper and clearly proscribed under any definition[.]" Velasco, 2006 WL 1679586, at *4 (citation omitted).

Moreover, the district court in Velasco found persuasive the government's argument that "the presence of [] scienter requirements cures any potential

16

vagueness issue[.]" Id. at *5. Indeed, "[b]ecause the [g]overnment will have to prove [McCray] knowingly and willfully violated the statutes at issue under the facts of this particular case, any alleged 'vagueness' or ambiguity in the statute will be cured by the [g]overnment['s] proof or resolved by a successful defense." Id. (citations omitted). That is, Congress required that the conduct of a defendant charged under the conspiracy and kickback statutes at issue in the present indictment be knowing and willful in order to incur criminal penalties, and therefore, the statutes will not implicate those with no knowledge that their actions were proscribed. See United States v. Williams, 218 F. Supp. 3d 730, 740 (N.D. Ill. 2016) (citation omitted) (discussing that the statute "explicitly include[d] a high scienter requirement– that the defendant 'knowingly and willfully' receive the kickback," and that this "strong scienter requirement [overcame] any potential vagueness in the statute because a person who would otherwise be ensnared without notice does not violate the statute"); see also United States v. Starks, 157 F.3d 833, 840 (11th Cir. 1998) (citations omitted) ("[A]lthough the statute does provide for criminal penalties, it requires 'knowing and willful' conduct, a *mens rea* standard that mitigates any otherwise inherent vagueness in the Anti-Kickback statute's provisions."). Thus, McCray's vagueness argument is without merit, and his motion to quash the indictment, [Doc. 25], is due to be denied.

## III. CONCLUSION

For the forgoing reasons and cited authority, it is **RECOMMENDED** that McCray's motion to quash the indictment, or alternatively, to dismiss all charges filed against him, [Doc. 25], be **DENIED**.

There are no other pending matters before the Magistrate Judge,[8] and the undersigned is aware of no problems relating to the scheduling of this case.[9]

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, certified Ready for Trial.

**IT IS SO ORDERED** and **RECOMMENDED**, this 1st day of December, 2017.

*Russell G. Vineyard*
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

---

[8] At the pre-trial conference on September 22, 2017, the Court granted McCray until November 21, 2017, to file a particularized motion to suppress. See [Doc. 29]. McCray has not filed a particularized motion to suppress and the time to do so has passed.

[9] The parties have informed the Court that they intend to take the testimony of a witness in California by deposition in January of 2018, and do not believe that this should delay the scheduling of the trial. See [Doc. 32].